IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division (Charlottesville)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MEMCO, INC., et al.,[1] | ) | Case No. 18-60687 |
| | ) | |
| Debtors | ) | (Jointly Administered) |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING
PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(C)(1), 364(C)(3), 364(D)(1), 364(E)
AND 507, (B) GRANT PRIMING LIENS AND SUPERPRIORITY CLAIMS TO THE
DIP LENDER, AND (C) PROVIDE ADEQUATE PROTECTION TO THE
PREPETITION LENDER PURSUANT TO 11 U.S.C. §§ 361, 362, AND 364, (II)
SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE
4001(C) AND (III) GRANTING RELATED RELIEF**

Memco, Inc. ("Memco"), H Properties, LLC ("H Properties") and M & M Equipment, LLC

("M & M Equipment"), as debtors  and debtors-in-possession (collectively, the "Debtors"), by

counsel, hereby move this Court (the "DIP Financing Motion") for the entry of an interim order

(the "Interim DIP Financing Order"), substantially in the form attached to this Motion as **Exhibit**

**A**, and a final order (the "Final DIP Financing Order"), in form to filed prior to the final hearing

on the Motion (the "Final DIP Financing Hearing"), pursuant to sections 105, 361, 362, 363, 364

and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy

Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"):  (i) authorizing the Debtors to obtain debtor-in-possession financing from

Lynchburg Steel Services LLC ("LSS") pursuant to the terms described herein; (ii) modifying the

automatic stay; (iii) granting adequate protection to LSS, in its capacity as the Debtors' prepetition

lender under that certain Loan Agreement dated March 12, 2014 (as amended, restated,

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are
Memco, Inc. (9596), H Properties, LLC (1575) and (M & M Equipment, LLC (6811).

supplemented or otherwise modified from time to time (the "Prepetition Loan Agreement," and together with each loan and security document executed in connection with the Prepetition Loan Agreement, the "Prepetition Loan Documents"); (iv) granting adequate protection to any other prepetition creditors of the Debtors holding valid, perfected, enforceable, continuing and non-avoidable pre-petition liens on DIP Collateral (as defined below); (v) granting to LSS a priming lien and superpriority administrative expense claim pursuant to section 364 of the Bankruptcy Code; and (vi) setting a date and time for the Final Hearing.

In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      A brief description of the Debtors and the circumstances which led to the filing of their bankruptcy petitions was included in the Debtors' Cash Collateral Motion, defined below.

2.      Of particular relevance for purposes of this Motion, it is important to understand that, for some time, the Debtors have been experiencing a fundamental weakness in their business and an acute shortage of liquidity and that, ultimately, those factors have combined to cause the Debtors to conclude that they cannot survive as a going concern. While the Debtors cannot survive as a going concern, they do have certain assets, including equipment and contractual rights, that they believe should be attractive to the right buyer.  However, (a) given their capital structure and the likely value of their businesses, the Debtors concluded that any sale would have to be effected under Section 363 of the Bankruptcy Code, and (b) in order to survive to the closing of any sale, the Debtors need liquidity through the use of cash collateral and additional financing.

3.      Based on the foregoing, the Debtors filed the instant bankruptcy proceedings and anticipate filing a motion seeking to sell substantially all of its assets on an expedited basis contemporaneously with the filing of this Motion.  Indeed, as a condition to LSS' consent to the

use of its cash collateral and consent to extend the necessary financing to sustain operations and pursue a sale process, the auction for the sale of the Debtors' assets has to occur no later than May 31, 2018.

4.      By this Motion, the Debtors seek authority to obtain senior secured superpriority financing (the "DIP Financing") from LSS pursuant to the terms and conditions described below and in the Interim DIP Financing Order and the Final DIP Financing Order, solely to pay the ordinary and necessary expenses itemized in the budget attached to the Interim DIP Financing Order (the "DIP Financing Budget").

5.      Among other things, the DIP Financing provides for term loan advances in an aggregate principal amount not to exceed $570,000.

6.      To facilitate the Debtors' prospects for maximizing the value of its assets, the Debtors must access the DIP Financing.  Indeed, as set forth below, absent the ability to access the DIP Financing, the Debtors will be unable, as of approximatley April 25, 2018, to meet their direct operating expenses, and will have to no choice but terminate all of their operations and employees. That would undoubtedly cause immediate and irreparable harm to the Debtors' estates and stakeholders by eliminating the possibility of realizing going concern value for any of the Debtors' assets and business.

## JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

7.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §1334(b).  Venue of this proceeding is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

8.      The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, 6004, and 9014.

## BACKGROUND

**A. Introduction**

9.      On April 9, 2018 (the "Petition Date"), Memco, H Properties, and M & M Equipment commenced their chapter 11 cases (collectively, the "Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of Virginia, Charlottesville Division (the "Bankruptcy Court" or "Court").   The Debtors intend to continue in possession of their properties and operating their businesses as debtors in possession in accordance with Bankruptcy Code sections 1107 and 1108.

10.      No trustee or committee of creditors has been appointed in the Cases.

**B.      LSS Prepetition Facility and Debtors' Additional Prepetition Financing**

11.      As of the Petition Date, LSS has a secured claim against Memco and its estate in an amount not less than $1,000,000 (the "Prepetition LSS Debt"), evidenced by and owing under the loan documents executed by Memco in favor of LSS' predecessor in interest, SunTrust Bank (together with any amendments or modifications thereto, the "LSS Loan Documents").   LSS acquired the LSS Loan Documents (together with the claims and liens evidenced thereby) from SunTrust Bank purchase to a purchase agreement dated April 4, 2018.

12.      LSS has perfected security interests and liens against all of Memco's goods, inventory, equipment, furniture, fixtures, accounts, chattel paper, instruments, deposit accounts, investment property, money, other rights to payment and performance, general intangibles and other property of Memco described in the LSS Loan Documents, whether now owned or hereafter acquired, and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property (the "Memco Collateral").   Except for the Crane Collateral and

the Real Property Collateral (each as defined below), LSS' liens against the Memco Collateral securing the Prepetition LSS Debt are first priority in nature. The Prepetition LSS Debt is secured by a second priority lien in the Crane Collateral and the Real Property Collateral.

13.    The INTERNAL REVENUE SERVICE ("IRS") has a security interest in the Memco Collateral subordinate to LSS by virtue of the filing of three (3) Notice of Federal Tax Liens on July 14, 2015, October 5, 2015 and February 20, 2018 that secure certain unpaid taxes owed by Memco to the IRS (the "IRS Debt"). As of the Filing Date, the IRS Debt is an amount of not less than $1.7 million. The IRS Debt is secured by liens on the Memco Collateral that are junior in priority to the liens securing the Prepetition LSS Debt (and, with respect to the Crane Collateral, junior in priority to the liens securing the Prepetition LSS Debt and the SunTrust Crane Debt).

14.    SUNTRUST EQUIPMENT FINANCE & LEASING CORP. ("SunTrust Leasing") has first priority security interests in each of two certain cranes owned by Memco (the "Crane Collateral"), which secure the obligations of Memco owed to SunTrust Leasing under two separate promissory notes issued by Memco in favor of SunTrust Leasing and dated as of August 28, 2008 and April __, 2014 (collectively, the "SunTrust Crane Debt"). As of the Petition Date, the SunTrust Crane Debt is an amount of not less than $1.5 million. The SunTrust Crane Debt is not secured by a lien on the Real Property Collateral.

15.    SUNTRUST BANK ("SunTrust") has a first priority security interest in the real property owned by H Properties (the "Real Property Collateral" and together with the Memco Collateral, the "Prepetition Collateral"), which secures the obligations of H Properties owed to SunTrust under that certain Commercial Note dated December 14, 2012 made by H Properties

payable to the order of SunTrust in the original principal amount of $400,000 (the "SunTrust Real Estate Debt"). The SunTrust Real Estate Debt is not secured by a lien on the Memco Collateral.

### C. The Cash Collateral Account

16.     As of the Petition Date, Memco maintained a "blocked" account (the "Controlled Account") subject to a Deposit Account Control Agreement ("DACA") among Memco, Lender, and Fifth Third Bank, pursuant to which Memco has granted a security interest in (and control over) the funds held therein. As of the Filing Date, the Controlled Account had a balance of $570,000.

17.     Memco and LSS entered into the DACA on April 9, 2018, prior to the Debtors' filing of their petitions, and LSS funded the Controlled Account with the balance referenced in the preceding paragraph prior to the Debtors' filing of their petitions on April 9, 2018. Pursuant to a side letter agreement dated as of April 9, 2018 (the "Funding Side Letter"), the Debtors and LSS agreed that title to the funds in the Controlled Account would not pass to the Debtors until such time (if ever) that the Court entered a cash collateral order (in form and substance acceptable to LSS) pursuant to which the Court authorized the Debtors to use such funds in the Controlled Account.

18.     Despite funding the Controlled Account prior to the Debtors' petitions, Fifth Third Bank did not execute its copy of the DACA until April 10, 2018.

19.     The Debtors and LSS maintain that the Controlled Account constitutes the Debtors' "cash collateral" as that term is defined in the Bankruptcy Code. Based on that belief, the Debtors filed an *Emergency Motion for Entry of An Order Authorizing the Debtors' Use of Cash Collateral* (the "Cash Collateral Motion") on April 10, 2018 (Docket Entry No. 14). The Court entered an *Interim Order (A) Authorizing the Debtors' Use of Cash Collateral Pursuant to Section 363 of the*

*Bankruptcy Code, (B) Granting Adequate Protection Pursuant to Sections 105, 361, 363 and 507 of the Bankruptcy Code, and (C) Scheduling a Final Hearing* (the "Interim Cash Collateral Order") (Docket Entry No. 28) approving the Debtors' use of a portion of the funds in the Controlled Account as cash collateral pursuant to a budget providing for the Debtors' expected expenditures through April 24, 2018 (the "Cash Collateral Budget"). The Interim Cash Collateral Order scheduled a hearing for April 24, 2018 for the Court's consideration of additional use of cash collateral beyond the April 24, 2018 date.

20.    As a result of Fifth Third Bank's signature of the DACA after the petitions were filed, and the provisions of the Side Letter Agreement governing Memco's ownership of the funds in the Controlled Account, the Debtors' and LSS have determined that the Court could view the remaining funds in the Controlled Account, not subject to the Court's Interim Cash Collateral Order and already used by the Debtors, not as cash collateral, but instead as additional funds to be loaned by LSS to the Debtors as a postpetition financing transaction. In order to provide for that potential interpretation of the Controlled Account as a postpetition financing transaction, the Debtors and LSS seek the Court's approval of the Debtors' use as postpetition debtor-in-possession financing of any funds remaining in the Controlled Account beyond the use previously approved in the Interim Cash Collateral Order.

### D.    The Proposed DIP Financing

21.    As noted above and in the Cash Collateral Motion, prior to the Petition Date, the Debtors' management determined that the Debtors would have an immediate and urgent need for additional working capital after the commencement of the Cases.

22.    The Debtors' management determined that their existing lender at the time, SunTrust Bank, would not be willing to provide any further lending to the Debtors of any nature, whether within a chapter 11 case or beyond.

23.    In the course of prepetition communications regarding the Debtors' liquidity issues, its ongoing jobs, and the willingness of LSS' parent company, Banker Steel Co. ("Banker Steel"), to assist the Debtors in maintaining their operations as a going concern with the plan that Banker Steel (or an affiliate of Banker Steel) would serve as a "stalking horse bidder" for a sale of the Debtors' assets in a case filed under the Bankruptcy Code, the Debtors and Banker Steel determined that it would be possible for Banker Steel to purchase SunTrust Bank's prepetition loan and security interests, and take over as the Debtors' senior secured lender.

24.    Based on the significant size of the lien held by the IRS (as well as the general financial condition of the Debtors), the Debtors determined that no other lender would be willing to provide financing to the Debtors at the time of their petition under any terms whatsoever, much less on terms matching what Banker Steel and LSS were willing to provide under the existing terms of the LSS Loan Documents.

25.    Pursuant to Bankruptcy Rule 4001, below is a summary of the terms of the proposed DIP Financing:

| Debtors | Memco, H Properties, and M & M Equipment |
|---|---|
| Lender | Lynchburg Steel Services LLC |
| Commitment, Availability, and Purpose | A secured term loan facility of up to $570,000 minus such amounts advanced to the Debtors under the Interim Cash Collateral Order. The DIP Financing, in conjunction with the prior amount disbursed from the Controlled Account following the Court's entry of the Interim Cash Collateral Order to provide funding for the Debtors through April 24, 2018, is being provided to fund the Debtors' general operating and working capital needs in the ordinary course of business and the administration of this chapter 11 case, consistent with the budgets |

| | |
|---|---|
| | attached to the Interim Cash Collateral Order and to the Interim DIP Financing Order. |
| **Term and Maturity** | The earliest of (a) May 31, 2018; (b) the consummation of a sale of all or substantially all of the Debtors' assets; (c) the entry of an order by the Court approving an alternative DIP Facility; and (d) such later date as LSS in its sole discretion may agree to in writing with the Debtors.<br><br>Availability of DIP Financing terminates immediately and prior to the Maturity Date upon the occurrence of a "<u>Termination Event</u>," which is the earliest to occur of (a) 25 days after the entry of the Interim DIP Financing Order (unless a Final DIP Financing Order approved by LSS has been entered as of such date), (b) the expiration of three (3) business days (the "<u>Default Notice Period</u>") following the provision of written notice to the Debtors (with a copy of such notice provided to counsel for the Debtors,  counsel for any Committee, and the U.S. Trustee) upon the occurrence of an Event of Default (as defined below), and (c) the date on which neither the Interim DIP Financing Order nor the Final DIP Financing Order is in full force and effect. |
| **Interest Rate and Fees** | Interest Rate:  5% per annum.<br><br>DIP Loan Fee:  None |
| **Conditions Precedent to Closing and Funding** | <u>Budget</u>.   LSS shall have received and approved the DIP Financing Budget, which provides the Debtors' estimated expenditures for the period of April 25, 2018 through May 31, 2018.<br><br><u>Interim DIP Financing Order</u>.  The Interim Financing Order shall have been issued in form and substance acceptable to LSS by April 26, 2018, and such Interim DIP Financing Order shall be in full force and effect and shall not have been vacated, stayed, reversed, modified or amended.<br><br><u>No Default or Event of Default</u>.  No Event of Default shall have occurred. |
| **Collateral** | All of the Debtors' presently existing or hereafter acquired property and assets, including any avoidance actions pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a). |
| **Priority** | First priority senior priming lien and security interest (subject only to the Carve-Out, as defined below) in and to all property of the Debtors, except as follows:<br><br>1.   With respect to the real estate owned by H Properties, any postpetition liens granted by the Debtors to LSS to secure |

|  | repayment of the DIP Financing shall be subordinate to the liens granted by the Debtors to SunTrust Bank.<br><br>2. With respect to the Memco cranes, any postpetition liens granted by the Debtors to LSS to secure repayment of the DIP Financing shall be subordinate to the liens granted by the Debtors to SunTrust Leasing.<br><br>3. With respect to the M & M Equipment assets, any postpetition liens granted by the Debtors to LSS to secure repayment of the DIP Financing shall be subordinate to all other claims and interests claimed by any party in interest. |
|---|---|
| **Limitations on Use of Funds** | Unless otherwise agreed to by LSS in writing, the proceeds of the DIP Financing shall be used by the Debtors solely for operating working capital purposes and chapter 11 administrative costs in the amounts and otherwise in accordance with and for the purposes provided for in the DIP Financing Budget; provided that the Debtors may be permitted to exceed to the budgeted amount during any budgeted period by a cumulative variance of no more than 10%; and further provided that none of the proceeds of the DIP Financing shall be used to pay the expenses of the Debtors or any Creditors' Committee in any action or to otherwise assert any claims or causes of action against LSS in any capacity. |
| **Validity of Prepetition Liens and Releases** | The Debtors have stipulated to the amount of the Prepetition LSS Debt and the validity and perfection of the Prepetition LSS Liens and has agreed to release any claims against LSS.  However, such stipulations and releases are not binding on the Debtors' estates if a Creditors' Committee or any other party in interest files a challenge to the extent, validity, or perfection of the Prepetition LSS Liens (a "<u>Challenge</u>") on or before May 22, 2018. |
| **Events of Default** | The following are Events of Default:<br><br>1. The failure by the Debtors to perform or comply with any term of described in the description of the DIP Financing contained in this Motion, the Interim DIP Financing Order or Final DIP Financing Order.<br><br>2. The cessation of the DIP Financing to be in full force and effect; or the DIP Financing being declared by the Court to be null and void; or the validity or enforceability of the DIP Financing being contested by the Debtors; or the Debtors denying in writing that they have any further liability or obligation under the DIP Financing; or LSS ceasing to have the benefit of the liens granted by the Interim DIP Financing Order or Final DIP Financing Order. |

3.  Except as permitted in the Interim DIP Financing Order or Final DIP Financing Order, the entry of any order of the Court granting to any third party a claim or lien *pari passu* with or senior to that granted to LSS.

4.  Until the DIP Facility is repaid in full, the Debtors shall make any payment of principal or interest or otherwise on account of any indebtedness or payables other than the DIP Financing or other than in accordance with the DIP Financing Budget approved by LSS.

5.  The Debtors fail to make any interest payments due under the Interim DIP Financing Order or Final DIP Financing Order within three (3) business days of when due.

6.  The Debtors failure to meet any of the Sale Milestones set forth below.

7.  The entry of an order converting the Cases, or any of them, to a case or cases under chapter 7 of the Bankruptcy Code, or the Debtors filing a motion or not opposing a motion seeking such relief.

8.  The entry of an order dismissing the Cases, or the Debtors filing a motion or not opposing a motion seeking such relief, unless consented to by LSS.

9.  The entry of any order in the Cases or any successor case, which order constitutes the stay, modification, appeal or reversal of the Interim DIP Financing Order or Final DIP Financing Order or which otherwise affects the effectiveness of the Interim DIP Financing Order or Final DIP Financing Order.

10. The entry of an order in the Cases appointing any examiner having expanded powers or a trustee to operate all or any part of the Debtors' business.

11. The entry of an order in the Cases granting relief from the automatic stay so as to allow a third party or third parties to proceed against any material (in LSS' reasonable discretion) property, including the collateral pledged pursuant to the DIP Financing and the Prepetition Liens, of the Debtors or to commence or continue any prepetition litigation against the Debtors involving potential liability not covered by insurance, in excess of $50,000 in the aggregate.

|  | |
|---|---|
|  | 12. Any judgment or order as to postpetition liability or debt for the payment of money in excess of $50,000 shall be rendered against the Debtors individually or in the aggregate, and the enforcement thereof shall not have been stayed.<br><br>13. Any non-monetary judgment or order with respect to a postpetition event shall be rendered against the Debtors which does or would reasonably be expected to (i) cause a material adverse change in the financial condition, business, prospects, operations or assets of the Debtors or (ii) have a material adverse effect on the rights and remedies of LSS hereunder, and there shall be a period of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect.<br><br>14. The Interim DIP Financing Order or Final DIP Financing Order being amended or modified without the consent of LSS. |
| **506(c) Waiver** | Subject to the entry of the Final DIP Financing Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in chapter 7 or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral or the Cash Collateral pursuant to Bankruptcy Code sections 506(c), 552(b) or 105(a) or any similar principle of law without the prior written consent of LSS. |
| **Carve-Out** | The Debtors and LSS have agreed that the terms of the DIP Financing may provide for a "carve-out" (the "<u>Carve-Out</u>"). The Carve-Out claims are senior to the liens and superpriority administrative expenses granted to LSS and are defined to mean: (i) statutory fees payable to the Clerk as well as those payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and (ii) solely to the extent provided for in the DIP Financing Budget, claims arising for payment of any fees and expenses of professionals approved by the Court to represent the Debtors, any trustee appointed, or any official committee appointed that arise prior to the termination of the Debtors' use of cash collateral and/or the maturity of the DIP Financing. |
| **Credit Bidding** | Following entry of the Final DIP Financing Order, LSS shall have the unqualified right to credit bid up to the full amount of the applicable outstanding DIP Obligations and the Prepetition Indebtedness (as applicable) in any sale of the DIP Collateral (or any part thereof) or  he Prepetition Collateral (or any part thereof), as applicable. |

| Sale Milestones | The following dates are the "milestones" for the Debtors' sale process: |
|---|---|
| | Filing of Sale Motion and Bid Procedures Motion – On or before April 19, 2018 |
| | Bid Procedures Hearing – April 24, 2018 |
| | Entry of Bid Procedures Order – April 27, 2018 |
| | Bid Deadline – On or before May 25, 2018 |
| | Auction Date (if necessary) – On or before May 28, 2018 |
| | Sale Hearing – On or before May 29, 2018 |
| | Entry of Sale Order – On or before May 29, 2018 |
| | Closing – On or before May 31, 2018 |
| Adequate Protection | LSS shall be granted adequate protection for, and in equal amount to, the diminution in value of its prepetition security interests in the form of super-priority claims and replacement liens on all assets securing the DIP Financing, which replacement liens shall be equal in priority to the DIP Liens and which super-priority claims shall be junior to the Carve-Out and to the super-priority claims granted to LSS. |
| Relief from Automatic Stay | The automatic stay of the ability of LSS to enforce its rights under the terms described in this Motion, the Interim DIP Financing Order, and the Final DIP Financing Order, and of the ability of LSS to enforce its rights under the Prepetition Loan Documents terminates automatically upon the occurrence of a Termination Event, defined above. |
| Fees and Expenses of LSS | LSS shall be entitled to reimbursement for the reasonable fees and expenses incurred by its legal counsel in connection with the negotiation, administration and enforcement of the DIP Financing, and such amounts shall be included in the legal balance of the DIP Financing. |

26.     LSS was unwilling to lend or agree to use of cash collateral on terms other than those set forth above.

27.     The Debtors do not believe that they can obtain other sources of working capital financing on a postpetition basis on terms or conditions more favorable than those described above for the proposed DIP Financing.

28.     The Debtors believe that the terms and conditions of the proposed DIP Financing are fair and reasonable under the circumstances, and that entering into and performing under the terms of the DIP Financing as described in this Motion is in the best interests of their estates and creditors.

## RELIEF REQUESTED

29.     By this Motion, the Debtors respectfully request entry of the Interim DIP Financing Order and Final DIP Financing Order (to be submitted in advance of the final hearing on the Motion) approving the Debtors' incurrence of debtor-in-possession financing on the terms described above and in the DIP Financing Budget, the Interim DIP Financing Order, and the Final DIP Financing Order.

## BASIS FOR RELIEF REQUESTED

### A.  The Terms of the DIP Financing Should Be Approved Under Section 364(c) of the Bankruptcy Code

30.     Section 364 of the Bankruptcy Code "provides bankruptcy courts with the power to authorize post-petition financing for a Chapter 11 debtor-in-possession." In re Defender Drug Stores, Inc., 126 B.R. 76, 81 (Bankr. D. Ariz. 1991).  "Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed [section] 364 to provide 'incentives to the creditor to extend post-petition credit.'" Id.

31.     In particular, section 364(c) of the Bankruptcy Code establishes the conditions under which a debtor may obtain certain types of secured credit and provides, in pertinent part, as follows:

> (c)     If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

> (1)    with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> (2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3)    secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

32.    Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estates.  See e.g., In re Simasko Prod. Co., 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing stipulation where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estates).

33.    Courts have articulated a three-part test to determine whether a debtor may obtain financing under section 364(c) of the Bankruptcy Code:

> i.    the debtor is unable to obtain unsecured credit under section 364(b) (i.e., by granting a lender administrative expense priority);
> ii.    the credit transaction is necessary to preserve the assets of the estate; and
> iii.    the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor and the proposed lender.

See In re Aqua Assocs., 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above factors and holding that credit acquired is of significant benefit to the debtor's estate).

**i.    Credit Was Not Obtainable on Better Terms**

34.    In satisfying the standards of Bankruptcy Code section 364(c), a debtor need not seek credit from every available source, but should make a reasonable effort to seek other sources of credit available of the type set forth in sections 364(a) and (b) of the Bankruptcy Code. See, e.g., Bray v. Shenandoah Fed. Sav. and Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986).

35.    To show that the credit required is not obtainable on an unsecured basis or on better terms, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of sections 364(c) of the Bankruptcy Code.  Id.  Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable."  Id. at 1088; see also Ames Dep't Stores, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (holding that debtor made a reasonable effort to secure financing where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders).

36.    Indeed, despite reasonable efforts (including inquiries to its prior senior lender, SunTrust Bank), the Debtors found no source of financing other than from LSS.  Furthermore, in light of the substantial lien held by the IRS, the Debtors determined that it was a near uncertainty that no party, other than LSS, was likely to provide financing to the Debtors on terms better than those set forth herein.

37.    The Debtors' efforts to seek alternative financing arrangements satisfy the statutory requirements of section 364 of the Bankruptcy Code.

### ii.    The DIP Financing is Necessary to Preserve Assets of the Estates

38.    The Debtors believe that the funds made available through the DIP Financing, when combined with the Debtors' use of their cash collateral as previously approved by the Interim Cash Collateral Order, will be adequate to pay all administrative expenses due and payable during the postpetition periods.

39.    It is essential that the Debtors obtain the DIP Financing to provide the Debtors' various stakeholders, including employees, vendors, service providers and other key constituencies, with confidence in the Debtors' ability to satisfy their obligations on a going

forward basis and, thereby, to preserve the opportunity to sell their assets on a going concern basis.

### iii.    The Terms of the DIP Financing are Fair, Reasonable, and Appropriate

40.    As discussed above, the terms and conditions of the proposed DIP Financing are fair and reasonable under the circumstances.

### B. The terms of the DIP Financing Should Be Approved Under Section 364(d) of the Bankruptcy Code

41.    When a debtor is not able to obtain financing pursuant to the provisions of section 364(c) of the Bankruptcy Code, the debtor may obtain such financing that is secured by a senior or equal lien to existing liens against property of the estate.  11 U.S.C. § 364(d).  Section 364(d) of the Bankruptcy Code provides that a court may authorize a debtor to obtain such priming or equal debt provided that: (i) the debtor is not able to obtain credit otherwise; and (ii) the lien being primed or diluted is adequately protected.  Id.

42.    As explained above, the Debtors do not have any viable alternatives to the DIP Financing, and LSS was unwilling to provide credit unless secured by a lien which at least provide for the same post-petition priorities among LSS, the IRS, SunTrust Leasing, SunTrust, and the Debtors' other stakeholders.  See Shaw Indus., Inc. v. First Nat'l Bank of PA (In re Shaw Indus., Inc.), 300 B.R. 861, 863, 865 (Bankr. W.D. Pa. 2003) (finding that where debtor made efforts by "contacting numerous lenders" and was unable to obtain credit without a priming lien, it had met its burden under section 3649d)).  To the extent the Debtors' grant of postpetition liens constitute higher priority than the prepetition liens afforded to LSS through the LSS Loan Documents, such liens may be considered to be "priming" LSS' prepetition liens.

43.     LSS (the only lender being primed) has agreed to be primed by the DIP Financing, as long as it is provided adequate protection as described in this Motion.

**C.     Good Faith**

44.     The terms of the DIP Financing described above were negotiated by the parties in good faith and at arms'-length. Therefore, LSS should be accorded the benefits of section 364(e) of the Bankruptcy Code to the extent any or all of the provisions of the DIP Financing, or any order of this Court pertaining thereto, are hereafter modified, vacated, stayed or terminated by subsequent order of this or any other court.

**D.     Modification of Automatic Stay**

45.     Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition.  The proposed DIP Financing contemplates a modification of the automatic stay to the extent necessary to permit LSS to perform certain ministerial acts act authorized under the terms for t he DIP Financing described in this Motion, the Interim DIP Financing Order, and the Final DIP Financing Order.

46.     Stay modification provisions of this kind are ordinary and standard features of postpetition debtor-in-possession financing facilities and, in the Debtors' business judgment, are reasonable under the present circumstances.  The Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the provisions set forth in this Motion and in the Interim DIP Financing Order.

**E.     Interim Approval of the DIP Financing is Necessary to Prevent Immediate and Irreparable Harm**

47.     Bankruptcy Rule 4001(c)(2) governs the procedures for obtaining authorization to obtain postpetition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14-day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. Proc. 4001(c)(2).

48.     The Debtors respectfully request that the Court permit the hearing already scheduled to take place on April 24, 2018 to serve as a preliminary hearing on the Motion and authorize the Debtors from and after entry of the Interim DIP Financing Order until the Final Hearing to obtain credit and use cash collateral on the terms contained in this Motion, as approved by the Interim DIP Financing Order.

49.     In examining requests for interim relief under the immediate and irreparable harm standard, courts apply the same business judgment standard applicable to other business decisions. See, e.g., Ames Dep't Stores, 115 B.R. at 36; Simasko, 47 B.R. at 449. After the 14-day period, the request for financing is not limited to those amounts necessary to prevent the destruction of the debtor's business, and the debtor is entitled to borrow those amounts that it believes are prudent to the operation of its business. Ames Dep't Stores, 115 B.R. at 36.

50.     Immediate and irreparable harm would result if the relief requested herein is not granted on an interim basis. As described in detail herein, the Debtors have an immediate need to obtain access to liquidity to preserve and maintain the value of its estate for the benefit of all parties in interest.

51.     The Debtors' next payroll (not otherwise provided for pursuant to the Interim Cash Collateral Order) is due to be paid on April 27, 2018, and the Debtors have need to access funds for payment of other items described on the DIP Financing Budget through May 31, 2018.

52.     Based on the foregoing, the Debtors request that, pending the Final Hearing, the Court conduct an interim hearing on April 24, 2018 to consider the Debtors' request for authorization to obtain interim financing under the provisions described for the DIP Financing in this Motion.

### F.  Request and Notice Procedures for the Final Hearing

53.     Pursuant to Bankruptcy Rules 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

54.     Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request that they be authorized to provide notice of the Final Hearing by serving a copy of this Motion on the parties identified in paragraph 55, below.  The Debtors submit that such notice is sufficient and requests that this Court find that no further notice of the Final Hearing and Final DIP Financing Order is required.

**NOTICE**

55.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Western District of Virginia; (b) the entities listed on the Lists of Creditors Holding the 20 Largest Unsecured Claims filed by the Debtors pursuant to Bankruptcy Rule 1007(d); (c) Lynchburg Steel Services LLC; (d) the Internal Revenue Service; and (e)  SunTrust Bank.  To the extent any committee (a "Committee") is appointed between the time of the Debtors' service to the parties identified in this paragraph and the proposed Interim Hearing on April 24, 2018, the Debtors will provide a copy of this Motion to the members of such Committee, and any counsel appointed to represent any such Committee, as soon as practicable following the appointment of any such Committee.

56.    In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## CONCLUSION

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court (a) authorize the Debtors to enter into and incur credit pursuant to the terms of the DIP Financing described in this Motion; (b) enter the Interim DIP Financing Order, substantially in the form annexed hereto as Exhibit A and enter the Final DIP Financing Order substantially in the form to be filed before the Final Hearing; and (c) schedule the Final Hearing and approve the form of notice thereof.

**Date: April 23, 2018**                          **MEMCO, INC.**
                                                  **By counsel**

/s/ Bennett A. Brown
Bennett A. Brown, VSB#12583
THE LAW OFFICE OF BENNETT A. BROWN
3905 Railroad Avenue, Suite 200N
Fairfax, VA  22030
Phone: 703.725.6750; Fax: 703.352.5122
e-mail: bennett@pcgalaxy.com
*Counsel for debtors*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the attached *motion*, was served either through the Court's CM/ECF system or by first class mail, postage prepaid, this 23rd day of April, 2018, to the persons and entities set forth on the attached list.

Date: April 23, 2018                          */s/ Bennett A. Brown*
                                              Bennett A. Brown
                                              *Counsel for debtors and debtors in*
                                              *Possession*

Airgas South
PO Box 9249
Marietta, GA  30065-2249

American Express
PO Box 1270
Newark, NJ  07101-1270

Arc 3 Gases
PO Box 26269
Richmond, VA  23260-6269

Atlantic Stud Welding Inc
PO Box 1892
West Chester, PA  19380-0069

American Interstate Insurance
2301 Highway 190 W
DeRidder, La 70634-6004

Bank of America
PO Box 31705
Tampa, FL  33631-3705

Brickstreet Insurance
400 Quarrier Street
Charleston, SC25301-2010

Capital One Card
PO Box 71083
Charlotte, NC 28272-1083

Crane Rigging Rental LLC
PO Box 1848
Yadkinville, NC  27055-1848

Culpeper County
PO Box 1477
Culpeper, VA 22701-6477

Internal Revenue Service-
Cent,Insolvency Ops
PO Box 7346
Philadelphia, Pa 19104-5016

Maxim Crane Works LP
1225 Washington Pike
Bridgeville, PA  15017-2825

Metro Iron Contracting Inc
4 Seabro Ave
Amityville, NY  11701-1202

Red Roof Inn
605 S Front St
Columbus, OH  43215-5777

Safety Plus
4254 Halls Mill Rd
Mobile, AL  36693-5617

Sunbelt Rentals
1275 W Mound St
Columbus, OH  43223-2213

UCR Acquisition LLC
2002 Graves Ct
Baltimore, MD  21222-5509

United Rentals (North America)
Inc.
4616 Lassen Ln
Fredericksburg, VA  22408-4202

VirginiaDepartment of Taxation
PO Box 1115
Richmond, VA 23218-1115

WO Grubb Steel Erection
5120 Jefferson Davis Hwy
Richmond, VA  23234-2252

Woodcock & Assoc PC
818 Sophia St
Fredericksburg, VA  22401-5824

Paul S. Bliley
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, VA 23219

Internal Revenue Service-
Cent,Insolvency Ops
2970 Market Street
Philadelphia, PA 19104-5016

Attorney General of the United
States
950 Pennsylvania Avenue, NW
Washington, DC 20530

Civil Process Clerk
310 First Street, S.W., Suite 906
Roanoke, VA 24011

W. Joel Charboneau
Office of the US Trustee
210 First Street, Suite 505
Roanoke, VA 24011

Richard Scott
302 Washington Avenue, SW
Roanoke, VA 24016

Lynchburg Steel Services, LLC
1619 Wythe Road
Lynchburg, VA 24501

W. Austin Jowers
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309

Memco, Inc.
13324 Cedar Run Church Road
Culpeper, VA 22701